IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Clifford R. Lambert,<br><br>                Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br>Acting Commissioner of Social<br>Security,<br><br>                Defendant. | Civil Action No. 2:15-cv-02101-CMC-MGB<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Clifford R. Lambert, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 37 years old on his alleged disability onset date of February 14, 2011. (R. at 81, 92.) Plaintiff claims disability due to, *inter alia*, chronic back pain, back injury, neck injury, diabetes, depression, high blood pressure, and arm and leg pain. (R. at 233.) Plaintiff completed some college and has past relevant work as a meat cutter and electronic database support. (R. at 91-92, 234.)

Plaintiff filed an application for DIB on January 18, 2012. (R. at 81.) After his application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on October 21, 2013. (R. at 81.) In a decision dated January 23, 2014, the ALJ found that Plaintiff was not disabled. (R. at 81-94.) The Appeals Council denied Plaintiff's request for review,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> (2) The claimant has not engaged in substantial gainful activity since February 14, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3) The claimant has the following severe impairments: disorders of the back status post neck and back surgeries (20 CFR 404.1520(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he must be able to change positions at his discretion throughout the workday. He can never climb ladders, ropes, or scaffolds and cannot do any kneeling or crawling. He can occasionally climb ramps and stairs; stoop; and crouch. He cannot be exposed to vibration, heights, or dangerous machinery. Due to attention and concentration difficulties caused by pain and medication side effects, he is limited to work involving only simple, routine tasks.
>
> (6) The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on February 22, 1973, and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).
>
> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2011, through the date of this decision (20 CFR 404.1520(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

Plaintiff has undergone three surgeries relevant to his claim of disability: (a) a left L5-S1 microdiscectomy in 1999 (R. at 317-18); (b) an L5-S1 "microscopic disc removal redo" in 2008 (R. at 306-07); and (c) a C5-C6 and C6-C7 anterior cervical discectomy and fusion in 2010 (R. at 313-15). The Plaintiff contends that the ALJ erred in failing to find him disabled, specifically asserting

the ALJ erred in giving "little weight to the opinions of [Plaintiff's] treating neurologist, Dr. Dyer." (Dkt. No. 14 at 19 of 32.) Plaintiff also contends the Appeals Council erred in failing to consider the evidence submitted by Plaintiff after the ALJ's decision. (Dkt. No. 14 at 28 of 32.) Although Plaintiff has raised two separate issues, in the opinion of the undersigned, the alleged errors work in tandem to warrant remand.

Dr. Dyer is, as noted by the ALJ, Plaintiff's treating neurologist. (R. at 90.) Dr. Dyer wrote a letter dated April 4, 2012, concerning Plaintiff's condition. (R. at 477-78.) In that letter, Dr. Dyer stated, *inter alia*,

> Mr. Lambert has had multiple surgeries on his spine. In 1999, he had an L5-S1 microdiscectomy performed by Dr. Brigham. He did well following the surgery until July 2008 when he started having significant leg pain. He first consulted with me in September 2008. On September 17, 2008, I performed a repeat L5-S1 microdiscectomy. On November 24, 2008, MRI of the lumbar spine showed stable post-surgical changes at L5-S1 with mild intradural adhesions noted; central rightward subligamentous non neurocompressive T12-L1 disc herniation; left sided T10-11 and T11-12 disc herniations without definite nerve root compression.
>
> In March 2010, Mr. Lambert underwent C5-C6 and C6-C7 anterior cervical diskectomy [sic] and fusion performed by Dr. Laxer at Orthocarolina. He did fairly well and returned to work again until he exacerbated his back pain in January 2011 after lifting some heavy totes at a laundromat.
>
> . . .
>
> On February 6, 2011, MRI of the cervical spine showed residual moderate spinal stenosis at C5-6 with mild flattening of the spinal cord; degenerative spondylosis at C3-4 and C4-5 with mild to moderate spinal stenosis; and moderate to severe right neural foraminal stenosis at C3-C4.
>
> On February 6, 2011, MRI of the lumbar spine showed stable left paracentral disc protrusion at L5-S1 with some fibrosis anterior to the left S1 nerve root; stable posterior right paracentral disc extrusion at T12-L1; degenerative spondylosis at T11-T12 with mild spinal stenosis and posterior left paracentral disc and endplate osteophyte bulge and moderate left neural foraminal stenosis at T11-T12.
>
> In March 2011, Mr. Lambert saw Dr. Anthony Kwon for a surgical consult but Dr. Kwon did not recommend another fusion at that time and referred him for pain management.
>
> On August 2, 2011, Mr. Lambert presented to me again. I noted that he was quite limited by pain. He had positive straight leg raises and radicular pain bilaterally. On

> August 11, 2011, an MRI of the lumbar spine showed stable post-surgical changes at L5-S1 with mild intradural adhesions; central rightward subligamentous non-neurocompressive T12-L1 disc herniation; and left sided T10-11 and T11-12 disc herniations without definite nerve root compression.
>
> On September 20, 2011, I noted that Mr. Lambert continued to have [a] significant amount of baseline pain in his lower and mid back, with more numbness in his upper extremities. My physical examination was notable for Hoffmans more on the right than left and some trace weakness in the proximal upper extremity on both sides. He had increasing upper extremity numbness and evidence of hyperreflexia in his upper and lower extremities. I diagnosed him with cervical spondylosis.
>
> On September 24, 2011, an MRI of Mr. Lambert[']s cervical spine showed numerous abnormalities, including marked right and mild left C3-4 neural foramen stenosis due to spurring; mild right and mild to moderate left C4-5 neural foramen stenosis due to spurring; prominent facet degenerative changes at C7-T1; mild central spinal stenosis at C4-5; and mild molding of the spinal cord contour.
>
> Mr. Lambert has objective findings of disability by way of his MRIs, repeated surgeries and diagnostic findings upon repeated, clinical examinations by me and his other physicians, documented in his medical records and summarized here. These records document changes to Mr. Lambert's spine remarkable for their number and severity. Mr. Lambert[']s symptom of disabling pain is well supported by these findings.
>
> Mr. Lambert[']s underlying medical condition and resulting pain is such that he would not be able to sit or concentrate throughout a workday or for any period necessary to perform at any productive level. Mr. Lambert requires the ability to rest and lie down at will and as often as necessary due to his symptoms and pain. Having to maintain a sitting, standing or alternating position throughout a workday would be medically contraindicated for Mr. Lambert. Constant activity as required to perform a job would aggravate his pain and further hasten the already frank and significant degenerative changes in his spine.
>
> It is my opinion that Mr. Lambert has been totally disabled from performing any job since he stopped working in January 2011 due to the underlying degeneration of his spine and the chronic pain that these changes are, quite understandably, causing him. Mr. Lambert[']s medical condition will almost certainly remain disabling for the indefinite future.

(R. at 477-78.)

The ALJ noted Dr. Dyer's opinions and gave them "some" weight, but the ALJ decided not to give them "controlling, or even great weight." (R. at 88-90.) The ALJ stated, *inter alia*,

> The undersigned has . . . considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. Exhibit 20F is an opinion by Dr. Dyer, who qualifies as a treating source pursuant to Social

6

>  Security Ruling 96-2p. His opinion may thus be entitled to controlling weight in this evaluation. Dr. Dyer's opinion is evaluated pursuant to Social Security Ruling 96-2p and 20 CFR §404.1527(d), 416.927(d). Considered together, this ruling and the regulations require favorable, even controlling, weight to opinions of a treating physician, so long as such opinions are supported by medically acceptable clinical and diagnostic techniques and are not inconsistent with other substantial evidence. Added deference is to be given if the treatment relationship is long, if the examinations are frequent, and if the physician is a specialist. The record indicates that Dr. Dyer is a specialist in neurology and has a long standing treating relationship with the claimant. Additionally, the objective evidence does indicate that the claimant had severe back problems that were treated with multiple surgeries, injections, and prescription pain medications. However, Dr. Dyer's opinion is not entirely consistent with the objective findings including findings of normal gait and normal neurological functioning. In fact, in August 2013, Dr. Dyer noted that an MRI did not show any significant mass effect on the nerve root. Dr. Dyer further noted there was not any obvious evidence of recurrent disc herniation. Due to a lack of objective evidence to warrant surgery, Dr. Dyer advised continuation of conservative measures and pain management and advised the claimant to return in one year. These findings are more consistent with the remainder of the medical evidence including diagnostic testing and the claimant's own statements, which indicate the claimant's condition improved after Dr. Dyer's opinion was given. While Dr. Dyer's opinion has been considered herein and given some weight, it is not given controlling, or even great, weight as it is not consistent with the record or the residual functional capacity.

(R. at 90.)

Plaintiff's second allegation of error is that the Appeals Council erroneously failed to consider evidence submitted to it. (*See* Dkt. No. 14 at 28-29 of 32.) Plaintiff specifically points to an EMG and nerve conduction study from April 17, 2014, "which showed chronic left ulnar neuropathy at the elbow and chronic left C7 radiculopathy." (Dkt. No. 14 at 29 of 32.) Plaintiff asserts that "[w]hile the Appeals Council may have been correct that this evidence was penned after the ALJ decision, this does not warrant automatic denial of consideration." (Dkt. No. 14 at 29 of 32.) Citing *Bird v. Commissioner of Social Security Administration*, 699 F.3d 337, 345 (4th Cir. 2012), Plaintiff contends that rejection of the evidence of Plaintiff's EMG and nerve conduction studies was erroneous. (Dkt. No. 14 at 30-31 of 32.)

Turning back to Plaintiff's first allegation of error, Plaintiff asserts the ALJ's findings as to the opinions of Dr. Dyer "are unreasonable and in some instances inaccurate." (Dkt. No. 14 at 23 of 32.) Plaintiff contends the ALJ "fails to recognize the file does contain evidence of abnormal gait,"

and "even though there were instances of normal gait and normal neurological functioning, these instances do not erase the overwhelming positive objective findings in the record." (Dkt. No. 14 at 23 of 32.) Plaintiff also asserts the ALJ "was not qualified to pit his interpretation of Lambert's MRI against Dr. Dyer's medical conclusions." (Dkt. No. 14 at 26 of 32.) Finally, Plaintiff asserts that "[t]here is no evidence of quantified improvement that would disprove Dr. Dyer's opinions" and that the ALJ erred in "pre-determin[ing] Lambert's ability to work and then us[ing] that pre-determination to decide the treating physician's credibility." (Dkt. No. 14 at 26-27 of 32.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; *see also* 20 C.F.R. § 404.1527. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 1996 WL 374188, at *5; *see also* 20 CFR § 404.1527(c)(2).

Having reviewed the record as well as the parties' briefs, the undersigned recommends reversing and remanding the instant action to the Commissioner. In concluding that Dr. Dyer's opinion was "not entirely consistent with the objective findings," the ALJ cited "findings of normal gait and normal neurological functioning." (R. at 90.) While the record does contain some findings of normal gait and some evidence of normal neurological functioning, the record also contains significant evidence that Plaintiff's gait and neurological functioning were not normal. In March of 2011, Dr, Kwon noted that Plaintiff's "[s]ensory exam shows some maybe slightly decreased sensation on the top of the left foot. Otherwise, strength testing is 5/5." (R. at 357.) On March 16, 2011, and again on May 30, 2011, Dr. Obeng indicated that Plaintiff had an "atalgic gait." (R. at 392, 387.) Dr. Dyer's notes from September 20, 2011 indicate that Plaintiff had "Hoffman's more on the right than the left." (R. at 482.) These notes further state, "[Plaintiff] may have a trace weakness in his proximal upper extremity on both sides. His toe response seems to be down. He does not have a focal sensory change. His gait does not appear to be significantly different." (R. at 482.) Dr. Girault's notes from March 19, 2012 state as follows:

> Degenerative changes at the L5-S1 disc with broad based posterior disc protrusion and some apparent inferiorly extruding disc material from the inferior aspect of the disc, which extends to the right and left of midline. There is some generalized narrowing of the spinal canal at this level and there is probably some mild mass effect on both the right S-1 and the left S-1 nerve roots. There are also some mild facet degenerative changes greater on the left than the right. Post surgical changes are noted in the subcutaneous fat of the lower lumbar spine at about the level of the L-4 and L-5 spinous processes.

(R. at 606-07.) On August 23, 2012, although Dr. Dyer noted that Plaintiff "ambulate[d] well," he "still has a slight limp with his left leg." (R. at 474.) Dr. Dyer further noted that Plaintiff "ha[s] a Hoffmans in the right arm" and that Plaintiff's "reflexes are more brisk in the right leg than the left." (R. at 474.)

Plaintiff saw Dr. Dyer again on August 7, 2013. (R. at 596-97.) Dr. Dyer indicated that Plaintiff "does not have any change in his exam." (R. at 596.) Dr. Dyer noted that Plaintiff's "MRI scan shows some scar tissue ventral to the left S1 nerve root." (R. at 595.) Dr. Dyer further stated,

"I do not see significant mass effect on the nerve root. I'm not convinced that he has evidence of recurrent disc. This scan was compared to 2011. His other discs are well preserved." (R. at 596.) The "impression" section of this record states, "Left buttock and leg pain likely related to left S1 nerve root irritation. I do not see obvious evidence of recurrent disc herniation on his scan. He will continue conservative measures and pain management." (R. at 596.) Dr. Dyer stated that he did not "see enough evidence to consider surgical treatment at this time. He would like to avoid surgery if at all possible." (R. at 597.) Dr. Defilipp performed the MRI of the lumbar spine on August 7, 2013. (R. at 599-600.) This report indicated, *inter alia*, a "right sided disc herniation at T12-L1 that is most to moderate in size. This deforms the thecal sac but does not clearly compress the spinal cord." (R. at 599.)

Thus, while the ALJ discounted Dr. Dyer's opinion due to the findings of a normal gait and normal neurological functioning, certainly the record did contain evidence of an *abnormal* gait and *abnormal* neurological functioning.[2] What is perhaps even more troubling to the undersigned is the Appeals Council's decision declining to consider the results of an EMG and a nerve conduction study simply because these tests were completed approximately four months after the ALJ's decision. The regulations provide, *inter alia*,

> The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any *new and material* evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision.

---

[2]The ALJ also discounted Dr. Dyer's opinion because "there was not any obvious evidence of recurrent disc herniation," and "[d]ue to a lack of objective evidence to warrant surgery, Dr. Dyer advised continuation of conservative measures and pain management and advised the claimant to return in one year." (R. at 90.) The ALJ stated that "[t]hese findings are more consistent with the remainder of the medical evidence including diagnostic testing and the claimant's own statements, which indicate the claimant's condition improved after Dr. Dyer's opinion was given." (R. at 90.) However, it is not clear to the undersigned that Dr. Dyer's opinion is not to be believed because Dr. Dyer did not recommend surgery. *See, e.g., Garcia v. Astrue*, 10 F. Supp. 3d 282, 293-94 (S.D.N.Y. 2012) (finding the ALJ "placed undue weight on Dr. Bajwa's finding that Plaintiff was not a candidate for surgery," stating, "The fact that Plaintiff's condition could not be corrected by surgery does not establish that it was not disabling; it simply means it could not be treated surgically."). In fact, Dr. Kwon's notes from March of 2011 indicate that "[g]iven [Plaintiff's] young age," Dr. Kwon would "not recommend fusion at this point; only if all other treatment modalities are exhausted." (R. at 358.) Dr. Kwon further stated, "Again, I told him with the surgery I would give him less than a 50/50 chance of seeing real significant improvement." (R. at 358.)

> If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application. . . .

20 C.F.R. § 404.976(b)(1) (emphasis added); *see also* 20 C.F.R. § 404.970(b). "Evidence is new . . . if it is not duplicative or cumulative," and "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins v. Sec'y*, 953 F.2d 93, 96 (4th Cir. 1991) (citations omitted). In *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), the Fourth Circuit held that where the treating physician in that case submitted a letter to the Appeals Council detailing Plaintiff's injuries and recommending significant restrictions on Plaintiff's activity, it "simply [could not] determine whether substantial evidence support[ed] the ALJ's denial of benefits" because the ALJ, in rendering his decision, had specifically emphasized that the record before him did not include any restrictions from the treating physician. *Meyer*, 662 F.3d at 707. The *Meyer* court stated, *inter alia*,

> [N]o fact finder has made any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record. Assessing the probative value of competing evidence is quintessentially the role of the fact finder. We cannot undertake it in the first instance. Therefore, we must remand the case for further fact finding.

*Id*.

The evidence the Appeals Council declined to consider concerned an EMG and nerve conduction study performed by Dr. Baker of Colonial Neurology on April 17, 2014. (*See* R. at 64-69.) The "conclusion" section of that report states, "This abnormal study demonstrates electrodiagnostic evidence of: 1. Chronic left ulnar neuropathy at the elbow. 2. Chronic left C7 radiculopathy." (R. at 65.) The Appeals Council declined to consider this evidence, stating, *inter alia*,

> We . . . looked at the **Medical Evidence of Record from Colonial Neurology dated April 17, 2014 (6 pages)**; Medical Evidence of Record from Sumpter Radiology dated May 5, 2014 (1 page); Medical Evidence of Record from The Pain Center dated May 1, 2014 to May 13, 2014 (5 pages); Medical Evidence of Record from Colonia Family Practice dated from March 25, 2014 to May 8, 2014 (22 pages); Medical

11

> Evidence of Record from Carolina Neurosurgery and Spine dated July 1, 2014 (3 pages); and Medical Evidence of Record from The Pain Center of FCHC dated from May 1, 2014 to December 2, 2014 (23 pages). The Administrative Law Judge decided your case through January 23, 2014. **This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 23, 2014**.

(R. at 2 (emphasis added).) As noted above, Plaintiff cites *Bird* and contends that rejection of the evidence of Plaintiff's EMG and nerve conduction studies was erroneous. (Dkt. No. 14 at 30-31 of 32.)

The undersigned agrees that the Appeals Council erred in failing to consider this evidence. In *Bird v. Commissioner*, 699 F.3d 337 (4th Cir. 2012), the plaintiff argued the "ALJ erred in failing to give retrospective consideration to medical evidence created after his DLI," and the Fourth Circuit agreed. *Bird*, 699 F.3d at 340-41. The plaintiff in *Bird* presented no medical records preceding March 31, 2005, his DLI; the first medical record was from June 2006, wherein the screening test for depression was negative. *Id*. at 339. A psychologist diagnosed the plaintiff, in September of 2006, as having Post Traumatic Stress Disorder (PTSD); in September of 2007 that same psychologist noted that the plaintiff's symptoms had persisted since his return from Vietnam. *Id*. The ALJ concluded that although the plaintiff suffered from PTSD before his DLI, his "impairment was insufficiently severe to qualify him for receipt of Social Security disability benefits." *Id*. at 340. In reaching this conclusion, the ALJ "relied in part on the lack of medical evidence created before [the plaintiff's] DLI." *Id*.

On appeal, the plaintiff argued the ALJ "did not give proper consideration to all the relevant evidence," and the Fourth Circuit agreed. *Id*. The Fourth Circuit held that evidence produced after a claimant's DLI was generally admissible as long as "the evidence permits an inference of linkage with the claimant's pre-DLI condition" and that "retrospective consideration of medical evidence is especially appropriate when corroborated by lay evidence." *Id*. at 342.

In the case *sub judice*, the evidence of the EMG and nerve conduction study "permits an inference of linkage" to the relevant period, especially in light of the finding of "***chronic***" neuropathy and radiculopathy. (R. at 65 (emphasis added).) Indeed, as noted by the ALJ, Plaintiff's main impairments were related to his back and neck. (R. at 83, 98; *see generally* R. at 81-93.) Accordingly, pursuant to *Bird*, the evidence should have been considered. This is especially so given that one of the main reasons cited by the ALJ for discounting Dr. Dyer's opinion was the Plaintiff's "normal neurological functioning." While Defendant argues this evidence is not "both new and material," the undersigned disagrees. (Dkt. No. 15 at 15 of 17.) Defendant contends that although the EMG and nerve conduction study was not in the record before the ALJ, the ALJ "considered Plaintiff's subjective complaints associated with his upper extremities and any resulting functional limitations." (Dkt. No. 15 at 15 of 17.) The ALJ certainly noted Plaintiff's testimony, (R. at 86), but he did not credit it, noting that the "objective and clinical evidence does not fully support limitation to the degree alleged (R. at 91).

While Defendant asserts there is "no reasonable probability" this evidence would change the ALJ's findings because "it says nothing about Plaintiff's functional limitations during the time period at issue," (Dkt. No. 15 at 15-16 of 17), the undersigned disagrees. As noted herein, the ALJ rejected Plaintiff's testimony due to lack of "objective and clinical evidence," and he also rejected the opinion of Plaintiff's treating neurologist because it was "not entirely consistent with the objective findings including findings of normal gait and normal neurological functioning." (R. at 90-91.) The evidence presented to the Appeals Council is objective and clinical evidence that supports Plaintiff's claim of disability, and as in *Meyer*, however, no fact finder has made any finding as to this evidence, or attempted to reconcile this evidence with the other evidence in the record. *See Wise v. Colvin*, Civ. A. No. 6:13-2712-RMG, 2014 WL 7369514, at *6 (D.S.C. Dec. 29, 2014) ("This greater evidentiary support contained in the June 2013 opinion report clearly constitutes 'new and material' evidence that under *Meyer* should have been considered prior to a final decision by the Commissioner."); *see*

*also Boggs v. Astrue*, Civ. A. No. 2:12-CV-25, 2012 WL 5494566, at *5 (N.D. W. Va. Nov. 13, 2012) ("The ALJ stated that he did not give significant weight to Dr. Given's opinion because, in part, 'Dr. Given's opinions are based primarily on the claimant's subjective complaints, rather than any objective findings.' [Tr. 37]. This suggests that the evidentiary gap played a role in the ALJ's decision. The new evidence corroborates the opinion of Dr. Given. The Appeals Council, in making the evidence part of the record but denying review, did not make any factual findings as to the FCE 'or attempt[] to reconcile that evidence with the conflicting and supporting evidence in the record.' *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). Since assessing the probative value of evidence 'is quintessentially the role of the fact finder,' the case must be remanded for further fact finding."). Accordingly, the undersigned recommends remanding the instant action.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 22, 2016
Charleston, South Carolina